UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Miami Division
Case No.: 1:23-cv-20495-SEITZ/REID

**CENTER FOR BIOLOGICAL DIVERSITY; BAT CONSERVATION INTERNATIONAL; MIAMI BLUE CHAPTER OF THE NORTH AMERICAN BUTTERFLY ASSOCIATION;** and **TROPICAL AUDUBON SOCIETY**,

    *Plaintiffs,*

v.

**DEBRA HAALAND**, in her official capacity as Secretary of the U.S. Department of the Interior; **U.S. DEPARTMENT OF THE INTERIOR; CHARLES F. SAMS III**, in his official capacity as Director of the National Park Service; and **NATIONAL PARK SERVICE**,

    *Defendants,*

**MIAMI-DADE COUNTY**,

    *Defendant-Intervenor.*

**FEDERAL DEFENDANTS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT AND RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

**MOTION FOR PARTIAL SUMMARY JUDGMENT** .................................................................. 1

**MEMORANDUM OF LAW AND RESPONSE** ........................................................................ 1

**INTRODUCTION** ................................................................................................................ 1

**LEGAL BACKGROUND** ...................................................................................................... 2

    A.   Endangered Species Act ............................................................................................ 2

    B.   National Environmental Policy Act .......................................................................... 4

    C.   Federal Lands to Parks Program ............................................................................... 5

**FACTUAL AND PROCEDURAL BACKGROUND** .................................................................. 5

**STANDARD OF REVIEW** .................................................................................................... 7

**ARGUMENT** ....................................................................................................................... 7

    I.   NPS has not completed the necessary steps to determine whether formal consultation is required under ESA Section 7(a)(2). ........................................................................ 8

    II.   NPS did not irreversibly and irretrievably commit resources in violation of ESA Section 7(d) when it entered into the 2022 Agreement. ............................................. 9

**REMEDY** ........................................................................................................................... 11

**CONCLUSION** .................................................................................................................. 12

i

## TABLE OF AUTHORITIES

**Case**                                                                                                                            **Page**

*Allied–Signal v. U.S. Nuclear Regul. Comm'n*,
 988 F.2d 146 (D.C. Cir. 1993) .................................................................................................. 12

*Bays' Legal Fund v. Browner*,
 828 F. Supp. 102 (D. Mass. 1993) ............................................................................................ 10

*Black Warrior Riverkeeper v. U.S. Army Corps of Eng'rs*,
 781 F.3d 1271 (11th Cir. 2015) ................................................................................................. 11

*Citizens to Preserve Overton Park v. Volpe*,
 401 U.S. 402 (1971) ................................................................................................................... 7

*Def. of Wildlife v. Bureau of Ocean Energy Mgmt.*,
 684 F.3d 1242 (11th Cir. 2012) .................................................................................................. 6

*Def. of Wildlife v. Bureau of Ocean Energy Mgmt.*,
 871 F. Supp. 2d 1312 (S.D. Ala. 2012) ...................................................................................... 9

*Miccosukee Tribe of Indians v. United States*,
 566 F.3d 1257 (11th Cir. 2009) .................................................................................................. 7

*N. Slope Borough v. Andrus*,
 486 F. Supp. 332 (D.D.C. 1980) ................................................................................................ 9

*Robertson v. Methow Valley Citizens Council*,
 490 U.S. 332 (1989) ................................................................................................................... 4

*Sierra Club v. Marsh*,
 872 F.2d 497 (1st Cir. 1989) ...................................................................................................... 4

*Sierra Club v. U.S. Army Corps of Eng'rs*,
 295 F.3d 1209 (11th Cir. 2002) .................................................................................................. 4

*Stewart v. Azar*,
 366 F. Supp. 3d 125 (D.D.C. 2019) .......................................................................................... 12

*Wash. Toxics Coal. v. Env't Prot. Agency*,
 413 F.3d 1024 (9th Cir. 2005) .................................................................................................... 9

**Statutes**

5 U.S.C. § 706 .................................................................................................................................. 7

16 U.S.C. § 1531(b) .................................................................................................................. 1

16 U.S.C. § 1532(6) .................................................................................................................. 2

16 U.S.C. § 1532(20) ................................................................................................................ 2

16 U.S.C. § 1533(a) .................................................................................................................. 2

16 U.S.C. § 1533(b) .................................................................................................................. 2

16 U.S.C. § 1536(a)(2) .............................................................................................................. 2

16 U.S.C. § 1536(b)(3)(A) ........................................................................................................ 3

16 U.S.C. § 1536(d) .................................................................................................................. 4

40 U.S.C. § 550(b) .................................................................................................................... 4

40 U.S.C. § 550(b)(1) ............................................................................................................... 4

40 U.S.C. § 550(e)(4)(A) .......................................................................................................... 5

42 U.S.C. § 4332(C) ................................................................................................................. 4

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................................. 6

**Regulations**

40 C.F.R. § 1501.4 .................................................................................................................... 4

40 C.F.R. § 1501.5 .................................................................................................................... 4

40 C.F.R. § 1501.6 .................................................................................................................... 4

41 C.F.R. §§ 102-75.625 ........................................................................................................... 5

50 C.F.R. § 402.01(b) ............................................................................................................... 2

50 C.F.R. § 402.02 ................................................................................................................ 2, 3

50 C.F.R. § 402.12(c) ............................................................................................................... 2

50 C.F.R. § 402.13(c) ............................................................................................................... 2

50 C.F.R. § 402.12(d)(1) .......................................................................................................... 2

Case 1:23-cv-20495-PAS   Document 47   Entered on FLSD Docket 10/10/2023   Page 5 of 19
...


50 C.F.R. § 402.14(a) ................................................................................................................ 2, 3

50 C.F.R. § 402.14(b)(1) ............................................................................................................ 3, 7

50 C.F.R. § 402.14(g)-(h) ............................................................................................................... 3

50 C.F.R. § 402.14(i) ...................................................................................................................... 3

50 C.F.R. §§ 402.13(c) ................................................................................................................... 3

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants Debra Haaland, in her official capacity as Secretary of the Department of the Interior; the U.S. Department of the Interior; Charles F. Sams III, in his official capacity as Director of the National Park Service; and the National Park Service ("NPS") (collectively, "Federal Defendants") respectfully move for partial summary judgment on Plaintiffs' Third Claim that NPS violated Section 7(d) of the Endangered Species Act ("ESA") and on a portion of Plaintiffs' Second Claim contending that NPS was required to complete formal ESA Section 7(a)(2) consultation. Federal Defendants have admitted liability on the remainder of Plaintiffs' Second Claim and Plaintiffs' First Claim under the National Environmental Policy Act ("NEPA") and thus are not moving for summary judgment on those claims.

## MEMORANDUM OF LAW AND RESPONSE
## INTRODUCTION

In 2011, NPS and Miami-Dade County (the "County") executed an agreement to release certain parcels of land owned by the County near Zoo Miami from restrictive covenants held by NPS and to impose those covenants on comparable lands. In 2022, NPS and the County executed an agreement (the "2022 Agreement") to amend the legal description of the parcels released from restrictions through the 2011 agreement so that the County could lease the released land to developer Miami Wilds LLC ("Miami Wilds") as part of a plan to develop a water park adjacent to Zoo Miami. The 2022 Agreement is the subject of this case.

Plaintiffs allege that NPS failed to comply with NEPA and the ESA by entering into the 2022 Agreement prior to completing an environmental review required by NEPA and consultation with the U.S. Fish and Wildlife Service ("FWS") required by Section 7 of the ESA.

1

NPS does not dispute that it did not complete ESA Section 7 consultation or NEPA review prior to entering into the 2022 Agreement or that such consultation and review was required. Thus, this response primarily focuses on the appropriate remedy.

## LEGAL BACKGROUND

### A. Endangered Species Act

Congress enacted the ESA "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species[.]" 16 U.S.C. § 1531(b). The ESA requires FWS and the National Marine Fisheries Service ("NMFS")[1] to list species that meet the definition of endangered or threatened species as well as designating critical habitat for listed species, to the maximum extent prudent and determinable. *Id*. § 1533(a), (b). An endangered species is "any species which is in danger of extinction throughout all or a significant portion of its range," *id.* § 1532(6), while a threatened species is "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range," *id.* § 1532(20).

Once FWS lists a species, it receives certain protections under the ESA. As relevant here, ESA Section 7(a)(2) requires Federal agencies to consult with FWS and/or NMFS to ensure that any actions they authorize, fund, or carry out are "not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification" of designated critical habitat. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.02 (defining "action" as "all activities or programs of any kind authorized, funded, or carried out, in

---

[1] The Secretary of Commerce and Secretary of the Interior have delegated their ESA responsibilities to NMFS and FWS, respectively. *See* 50 C.F.R. § 402.01(b). FWS is responsible for the species at issue in this case.

2

whole or in part, by Federal agencies in the United States or upon the high seas"). To comply with that mandate, the Federal agency (known as an "action agency") first determines whether any listed species may be present in the action area and whether that area overlaps with critical habitat. 50 C.F.R. § 402.12(c). If no listed species or critical habitat are present in the action area, further consultation is not required. *See id*. § 402.12(d)(1). And if the action agency determines that its proposed action will have no effect on listed species or critical habitat, the ESA's Section 7 consultation requirement is not triggered. *See id*. § 402.14 (a).

If, however, the action agency determines that its proposed action may affect listed species or critical habitat, it may engage in informal consultation with the appropriate consulting agency or prepare a biological assessment. 50 C.F.R. §§ 402.13(c), 402.14(b)(1). If, during informal consultation or as a result of the preparation of a biological assessment, the action agency determines, with the written concurrence of FWS, that the proposed action is not likely to adversely affect any listed species or critical habitat, formal consultation is not required and compliance with Section 7 is complete. *See id.* § 402.14(b)(1). However, if FWS does not concur with the action agency's "not likely to adversely affect" determination, or the action agency determines its action is likely to adversely affect a listed species or critical habitat it is required to initiate formal consultation. *Id.* § 402.14(a).

When an action agency initiates formal consultation, FWS will issue a written biological opinion that assesses whether the action is likely to jeopardize the continued existence of a listed species or result in destruction or adverse modification of its critical habitat. 50 C.F.R. § 402.14(g)-(h). If a biological opinion concludes that the proposed action is not likely to jeopardize a listed species or adversely modify critical habitat, FWS will include an incidental take statement that specifies the extent of take that is reasonably certain to occur and will provide

reasonable and prudent measures to minimize the effects of the action, as well as terms and conditions that must be complied with. 50 C.F.R. § 402.14(i). At that time, the action agency has completed its ESA requirements and may proceed with the proposed action. But if the biological opinion concludes that the proposed action is likely to jeopardize a listed species or destroy or adversely modify critical habitat, the Service will suggest reasonable and prudent alternatives to the proposed action in the biological opinion. 16 U.S.C. § 1536(b)(3)(A); *see* 50 C.F.R. § 402.02.

During the Section 7(a)(2) consultation process, the ESA also prohibits the action agency from making an "irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative[s.]" 16 U.S.C. § 1536(d).

### B. National Environmental Policy Act

NEPA is "not a substantive environmental statute which dictates a particular outcome if certain consequences exist." *Sierra Club v. U.S. Army Corps of Eng'rs*, 295 F.3d 1209, 1214 (11th Cir. 2002). Instead, NEPA is a procedural statute that "creates 'a particular bureaucratic decisionmaking process.'" *Id.* (quoting *Sierra Club v. Marsh*, 872 F.2d 497, 497 (1st Cir. 1989)). The "action-forcing" provisions of NEPA procedures require that agencies take a "hard look" at the environmental consequences of proposed actions in order to prevent uninformed agency action. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350-51 (1989). To meet the procedural goals of the statute, NEPA requires that an agency prepare a comprehensive environmental impact statement ("EIS") for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). Where an EIS is not warranted, an agency can comply with NEPA's procedural requirements through preparing an Environmental

Assessment ("EA") and issuing a finding of no significant impact. 40 C.F.R. §§ 1501.5, 1501.6. If the proposed action falls into a class of actions that the agency has predetermined do not normally have a significant environmental impact—known as "categorical exclusions"—the agency can analyze the action for extraordinary circumstances and proceed without preparing and EIS or EA. 40 C.F.R. §§ 1501.4.

### C. Federal Lands to Parks Program

The Federal Lands to Parks Program ("FLPP"), 40 U.S.C. § 550(b) and (e), provides a mechanism for states and localities to acquire surplus real property from the Federal government for public park and recreation purposes. Lands transferred through the Program are subject to a restrictive covenant that provides the property shall be maintained for these purposes in perpetuity. 40 U.S.C. § 550(e)(4)(A). The enabling legislation allows the Secretary of the Interior to release lands from this restriction if the Secretary determines that doing so will not prevent accomplishment of those purposes. *Id.* § 550(b)(1). Accordingly, NPS, as the agency who administers the Program, allows states and localities to request that lands acquired through the Program be released from the public park and recreation covenant and the covenant be imposed on a suitable substitute property. *See* 41 C.F.R. §§ 102-75.625, 102-75.685.

### FACTUAL AND PROCEDURAL BACKGROUND

Through the FLPP, Miami-Dade County acquired approximately 1,060 acres of land in southern Miami, formerly part of the Richmond Naval Air Station, from the Federal government. NPS00416. Portions of this acquired land have been developed into a zoological park and a railroad museum. *Id.* The County expressed a desire to develop additional parcels of the acquired land and subsequently entered into an agreement with NPS

5

in 2011 to release approximately 67 acres of land from land-use restrictions and impose those restrictions on comparable lands the County acquired to serve as a substitute park. NPS00402-403. Eleven years later, the County and NPS entered into an agreement the 2022 Agreement to amend the legal land descriptions of the parcels released from restrictions. NPS00396-400. The County subsequently leased the released land to developer Miami Wilds as part of a plan to develop a water park adjacent to Zoo Miami. NPS00670. Plaintiffs filed this suit alleging that NPS failed to comply with the ESA and NEPA prior to entering the 2022 Agreement. *See* Compl. for Declaratory and Injunctive Relief, ECF No. 1 ¶¶ 126-149. Plaintiffs sought to have the 2022 Agreement set aside, as well as an order from the Court declaring that the 2022 Agreement violated the ESA, NEPA, and Administrative Procedure Act ("APA"). *See id.* at 25 (Prayer for Relief).

Federal Defendants admitted procedural violations of the ESA and NEPA in entering the 2022 Agreement. *See* Fed. Defs.' Am. Answer, ECF No. 25 ¶¶ 130-133, 138-140, 142. NPS and the County sought to rescind the 2022 Agreement so that NPS could conduct the necessary environmental reviews prior to entering into any future land-release agreements with the County. *See* Notice of Deferred Vote on Rescindment of Amendment to Land Release Agreement between NPS and Miami-Dade County and Joint Status Report, ECF No. 36. In order for the County to execute the rescindment, it required approval from the Miami-Dade Board of County Commissioners ("BCC"). *Id.* The rescindment was put before the BCC on September 6, 2023, at which time the BCC deferred a vote on the issue until September 19. *Id.* On September 19, the BCC again deferred the issue until December 12, 2023, thereby delaying the County's decision on rescinding the 2022 Agreement until after the conclusion of briefing and argument in this action. *See* Def.-Int.'s Mot. For Leave to File

Third-Party Compl., ECF No. 39 ¶ 11.

## STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue over any material fact and if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c).

Claims brought under the ESA and NEPA are reviewed pursuant to the APA. *Defs. of Wildlife v. Bureau of Ocean Energy Mgmt.*, 684 F.3d 1242, 1248 (11th Cir. 2012) ("We review an agency's compliance with NEPA and ESA under the deferential 'arbitrary or capricious' standard.") (citations omitted). Section 706 of the APA grants a court the power to hold unlawful and set aside final agency actions, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." 5 U.S.C. § 706; *Miccosukee Tribe of Indians v. United States*, 566 F.3d 1257, 1264 (11th Cir. 2009). In determining whether an agency action is arbitrary and capricious, "the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971).

## ARGUMENT

Plaintiffs allege that NPS has violated NEPA, ESA Section 7(a), and ESA Section 7(d). NPS does not dispute that it did not complete an EIS, EA, or document a categorical exclusion, as required by NEPA. Fed. Defs.' Am. Answer ¶¶ 130-134. NPS also does not dispute that it failed to complete consultation pursuant to ESA Section 7(a)(2). *Id.* ¶¶ 138-140, 142. However, Plaintiffs' claims that (1) NPS was required to initiate formal consultation pursuant to ESA Section 7(a)(2) and (2) that NPS irretrievably committed resources in violation ESA Section 7(d) are not supported by the record and should therefore

be rejected by the Court.

### I. NPS has not completed the necessary steps to determine whether formal consultation is required under ESA Section 7(a)(2).

Although NPS admitted that it failed to complete ESA Section 7(a)(2) consultation prior to executing the 2022 Agreement, Fed. Defs.' Am. Answer ¶¶ 138-140, 142, it does not follow that formal consultation is required as Plaintiffs contend, Plaintiffs' Opening Brief, ECF No. 37 at 21.  ESA regulations set out the consultation options and explicitly provide that an action agency can comply with Section 7(a)(2) by engaging in informal consultation. 50 C.F.R. § 402.14(b)(1) ("A Federal agency need not initiate formal consultation if, as a result of the preparation of a biological assessment under § 402.12 or as a result of informal consultation with the Service under § 402.13, the Federal agency determines, with the written concurrence of the Director, that the proposed action is not likely to adversely affect any listed species or critical habitat.").

Here, because NPS has not yet completed a biological assessment or made a determination whether or not its decision to enter into the 2022 Agreement is likely to adversely affect listed species or critical habitat, it cannot yet be determined whether NPS is required to initiate formal consultation.  The administrative record clearly demonstrates that although NPS has taken initial steps to generate a biological assessment, an assessment has not been completed and thus NPS has not thoroughly evaluated the potential effects of the action on listed species and critical habitat.  *See, e.g.*, NPS00227; NPS00248.  NPS has not yet completed species and habitat assessments of the project area, which are significant components in determining whether the agencies must proceed with formal consultation.  NPS or FWS may determine that formal consultation is necessary here, but until the appropriate assessments are complete the option of informal consultation is still a possibility.

Thus, while NPS does not dispute that it failed to meet ESA Section 7(a)(2)'s procedural requirement to complete consultation with FWS prior to entering into the 2022 Agreement, Plaintiffs' assertion that NPS was required to initiate formal consultation is premature, as NPS and FWS have not yet evaluated the potential effects of the action and could determine formal consultation is not required.

II. **NPS did not irreversibly and irretrievably commit resources in violation of ESA Section 7(d) when it entered into the 2022 Agreement.**

Plaintiffs also argue that NPS violated ESA Section 7(d) because NPS's failure to complete consultation before executing the 2022 Agreement constituted an "irreversible or irretrievable commitment of resources." Pls. Opening Brief 23. However, while NPS admits that it entered into the 2022 Agreement before completing the consultation process, NPS has not committed resources in a way that forecloses the implementation of reasonable alternatives because Miami Wilds is prohibited from commencing development of the project area unless and until it receives approvals from FWS pursuant to Section 7 consultation. *See* NPS00379.

ESA Section 7(d) is intended to prevent an action agency from committing resources during the consultation process in a way that would prevent the possibility of alternatives to the proposed action that may avoid the likelihood of jeopardy or adverse modification. *Defs. of Wildlife v. Bureau of Ocean Energy Mgmt., Regul. & Enf't*, 871 F. Supp. 2d 1312, 1326 (S.D. Ala. 2012) ("The purpose of § 7(d) is to ensure that the status quo is maintained during consultation."); *Wash. Toxics Coal. v. Env't Prot. Agency*, 413 F.3d 1024, 1034-35 (9th Cir. 2005) (Section 7(d) was "enacted to ensure that the status quo would be maintained during the consultation process, to prevent agencies from sinking resources into a project in order to ensure its completion regardless of its impacts on endangered species."); *N. Slope Borough v. Andrus*, 486 F. Supp. 332, 356 (D.D.C. 1980) (explaining that the purpose of Section 7(d) was "to

9

preclude the investments of large sums of money in any endeavor if (1) at the time of the investment there was a reasonable likelihood that the project, at any stage of development, would violate [§] 7(a)(2), and (2) that investment was not salvageable"). Thus, the "critical question" in assessing a potential Section 7(d) violation is whether an agency's action prior to or during the consultation process will "preclude the development of ecologically safer [] alternatives" should a project "ultimately be deemed a threat to the survival" of species found in and around a project area. *Bays' Legal Fund v. Browner*, 828 F. Supp. 102, 112 (D. Mass. 1993).

 Here, the status quo of the project area has been and will continue to be maintained until Section 7 consultation is complete, therefore allowing for the implementation of any reasonable and prudent alternatives should formal consultation be required and FWS arrive at a jeopardy or adverse modification determination. Miami Wilds provided assurances to NPS and the County thorough a letter outlining its understanding that the ESA Section 7 consultation process must be completed prior to beginning any construction on the property. NPS00379. The assurance letter quotes Miami Wilds's lease with the County, which states that "[i]f the discovery of [] endangered species would prohibit [Miami Wilds] from proceeding with the development [of the project area] . . . then [Miami Wilds] shall be prohibited from proceeding with development . . . unless and until [Miami Wilds] develops and obtains approval from the FWS." *Id.* The letter further clarifies that "Miami Wilds will consider the completion of the Section 7 consultation process with the FWS as a condition precedent for starting construction of the Development." *Id.* The letter and lease "acknowledge that the Section 7 consultation could result in a determination that could alter or perhaps even prohibit the project, as planned, from proceeding." NPS00393. Accordingly, NPS's release of land-use restrictions prior to completing consultation does not foreclose the possibility of implementing any reasonable and prudent alternatives

identified by FWS during the consultation process and thus does not contradict the requirements of ESA Section 7(d).

## REMEDY

NPS does not dispute its failure to complete ESA Section 7(a)(2) consultation with FWS or its failure to conduct NEPA review prior to executing the 2022 Amendment.  *See* Fed. Defs.' Am. Answer ¶¶ 130-133, 138-140, 142.  NPS therefore acknowledges that the Court has the discretion to remedy these failures pursuant to § 706 of the APA.  NPS does dispute that it violated ESA Section 7(d) and respectfully requests that the Court deny Plaintiffs' motion for summary judgment on this claim.

Plaintiffs ask the Court for declaratory relief and vacatur of the 2022 Amendment. Pls. Opening Br. 16-20.  NPS does not contest Plaintiffs' request for declaratory relief, except for the two points raised above.  Specifically, the Court should not find that NPS failed to engage in formal consultation because NPS and FWS could determine the action is not likely to adversely affect listed species of their critical habitat; in which case formal consultation is not required.  Thus, at most the Court should find that NPS failed to complete consultation (informal or formal).  And the Court also should not grant Plaintiffs declaratory relief on their ESA Section 7(d) claim.

With respect to Plaintiffs' request for vacatur, Federal Defendants recognize that the Eleventh Circuit has held that the "the decision whether to vacate agency action falls within [the Court's] broad equitable discretion." *Black Warrior Riverkeeper v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1290 (11th Cir. 2015).  In this Circuit, whether or not an action should be vacated depends on (1) the "seriousness" of the action's deficiencies and (2) "the disruptive

11

consequences of an interim change that may itself be changed." *Id.* (quoting *Allied–Signal v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)).

While Federal Defendants do not request vacatur, they acknowledge that under these factors, vacatur is warranted here. NPS has admitted its failure to comply with the ESA and NEPA by entering into the 2022 Agreement without first completing ESA Section 7(a)(2) consultation and an analysis compliant with NEPA, *see* Federal Defendants' Amended Answer ¶¶ 130-133, 138-140, 142, and thus that NPS failed to consider important aspects of the issue before doing so. *See Stewart v. Azar*, 366 F. Supp. 3d 125, 155 (D.D.C. 2019) ("Failure to consider an important aspect of the problem is a 'major shortcoming' generally warranting vacatur." (citation omitted)). Moreover, the disruptive effects of vacatur here would not outweigh the deficiencies in the agency's decisionmaking process. Miami Wilds has not begun construction on the lands that are the subject of the 2022 Agreement, and in accordance with Miami Wilds' lease with the County, Miami Wilds is not authorized to begin until environmental reviews are completed. *See* NPS00378-379. Thus, vacating the 2022 Agreement would not disrupt work on the ground.

## CONCLUSION

NPS has admitted that it violated ESA Section 7(a)(2) and NEPA. For the foregoing reasons, NPS acknowledges that some declaratory relief is appropriate and that the factors the Eleventh Circuit considers for determining whether to vacate have been met.

Respectfully submitted this 10th day of October, 2023.

             TODD KIM
             Assistant Attorney General

    Environment & Natural Resources Division

    <u>/s/ *Bonnie Ballard*</u>
    BONNIE BALLARD
    Trial Attorney, Wildlife and Marine Resources Section
    MAGGIE C. WOODWARD
    Trial Attorney, Natural Resources Section
    United States Department of Justice
    Environment and Natural Resources Division
    150 M St. NE Washington, D.C. 20002
    Phone: (202) 305-1513 (Ballard)
           (202) 305-4224 (Woodward)
    Fax: (202) 305-0275
    Email: bonnie.m.ballard@usdoj.gov
           maggie.woodward@usdoj.gov

    ATTORNEYS FOR UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of October 2023, I filed the foregoing using the United States District Court CM/ECF, which caused all counsel of record to be served electronically.

/s/ *Bonnie Ballard*