**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 23-CV-20495-PAS

CENTER FOR BIOLOGICAL DIVERSITY,
BAT CONSERVATION INTERNATIONAL,
MIAMI BLUE CHAPTER OF THE NORTH
AMERICAN BUTTERFLY ASSOCIATION, and
TROPICAL AUDUBON SOCIETY,

       Plaintiffs,

v.

DEBRA HAALAND, in her official capacity as
Secretary of the U.S. Department of the Interior;
U.S. DEPARTMENT OF THE INTERIOR;
CHARLES F. SAMS III, in his official capacity
as Director of the National Park Service;
and NATIONAL PARK SERVICE,

       Defendants,

and

MIAMI-DADE COUNTY,

       Defendant-Intervenor.

_____/

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT SETTING ASIDE**
**2022 AGREEMENT AND RELEASE BETWEEN NATIONAL PARK SERVICE**
**AND MIAMI-DADE COUNTY**

      THIS MATTER is before the Court on Cross-Motions for Summary Judgment

filed by Plaintiffs [DE 37] and Federal Defendants [DE 47].  Plaintiffs' three-count

Complaint seeks to vacate the June 2022 Agreement and Release of land-use

restrictions, which the National Park Service ("NPS") entered with Miami-Dade County

("the County") to facilitate the development of the Miami Wilds waterpark, hotel, and

retail area ("the Project Area") near the Miami Zoo.  DE 37 at 9.  Plaintiffs also request

1

that the Court declare that by not undertaking the requisite environmental review and consultation before entering the 2022 Agreement and Release, NPS violated the National Environmental Policy Act ("NEPA") (Count One) and Sections 7(a)(2) and 7(d) of the Endangered Species Act ("ESA") (Counts Two and Three).  *Id.*  Federal Defendants do not dispute that they violated NEPA and ESA's Section 7(a)(2) and agree that Eleventh Circuit jurisprudence warrants vacatur.  DE 47 at 6, 16–17.  Federal Defendants only dispute Plaintiffs' Count Three claim that Federal Defendants violated the ESA's Section 7(d).  *Id.* at 6.  However, both parties agree that the Court need not reach the merits of the ESA Section 7(d) issue to grant vacatur.[1]

The Court has considered the parties' Cross-Motions for Summary Judgment [DE 37; DE 47], their Replies in support of the Motions [DE 52; DE 54], Statements of Material Facts [DE 38; DE 48; DE 53], Amended Summary of Uncontested Facts [DE 31], the Administrative Record, in particular the hard copies the parties submitted to the Court of the same, and the oral argument on December 6, 2023.  Based on the undisputed facts and the law, Plaintiffs' Motion for Summary Judgment and Federal Defendants' Motion for Partial Summary Judgment must be granted as to Counts One and Two, because Federal Defendants have not complied with the requirements of NEPA and ESA Section 7(a)(2).  Pursuant to the Administrative Procedure Act ("APA"), the Court vacates the 2022 Agreement and Release between NPS and the County.  5 U.S.C. § 706(2)(A).  Plaintiffs' Motion as to Count Three is denied because vacatur

---

[1] Defendant-Intervenor Miami-Dade County only opposes (1) a finding that the County induced NPS to take any action, (2) finding estoppel against the County, and (3) awarding attorneys' fees against the County.  DE 50 at 8.  Plaintiffs confirm that they have not alleged any claims against the County, and do not intend to pursue costs and fees from Defendant-Intervenor.  DE 52 at 6 n.1.

returns the parties to the *status quo ante* the 2022 Agreement and Release and reaching the merits of Count Three is not necessary.

## I.   FACTUAL BACKGROUND

The County owns the Project Area.  DE 31 at 2 ¶ 1.  In the 1970s and 1980s, the County received these lands from the Federal Government.  *Id.* at 2 ¶ 2.  The conveyances required the County to use the lands for public park or public recreational purposes, along with other terms, covenants, and restrictions.  *Id.*  In 2011, NPS and the County entered an agreement that released deed restrictions from sixty-seven acres of land near Zoo Miami and transferred the restrictions to another property.  DE 38 ¶ 2; DE 48 ¶ 2.  As part of an economic development plan, the County and Miami Wilds began planning for the construction of a water park, hotel, retail area, and parking lots. DE 38 ¶ 3–4; DE 48 ¶ 3–4.  The County recognized that part of the area was still encumbered by deed restrictions, preventing economic development.  *Id.*  Therefore, the County and NPS negotiated to transfer restrictions on lands in the Project Area to lands outside that area.  DE 31 at 2 ¶ 3.

From 2013 through 2023, final agency rules were published in the Federal Register that designated the species at issue here[2] as endangered under ESA and designated their critical habitat.  DE 31 ¶ 14–21.  Parts of the critical habitat and the Project Area overlap.  In October 2020, the United States Fish and Wildlife Service ("FWS") identified seventeen ESA-listed species in the Project Area, in response to the County's question as to whether any biological surveys should be conducted in

---

[2] These species include the Miami tiger beetle, the Florida bonneted bat, Bartram's scrub-hairstreak, the Florida leafwing, Carter's small-flowered flax, and the Florida brickell-bush.  DE 31 ¶ 14–21.

connection with the development.  NPS00763.  From November 2020 through August 2021, Plaintiffs Tropical Audubon Society and Bat Conservational International ("BCI") contacted NPS, raising concerns about the development's impact on endangered species and habitat.  DE 38 ¶ 16–20; DE 48 ¶ 16–20.  In July 2021, FWS sent a letter to a county official, highlighting "primary concerns" stemming from the development as to federally listed species, as well as the potential for "unavoidable adverse effects." NPS00243–44.  In September 2021, NPS staff stated that the agency expected to enter formal Section 7 consultation with FWS and acknowledged the same again in December 2021.  DE 38 ¶ 22–23; DE 48 ¶ 22–23.

In December 2021, the developer also sent NPS and the County an "assurance letter," outlining its "intention to consult with FWS" and conduct surveys for endangered species *after* "the ground lease between the County and Miami Wilds for the Development becom[es] effective."  NPS00378–79.  On January 31, 2022, Plaintiff BCI emailed an NPS staff member, inquiring whether NPS "has officially requested initiation of a [Section 7] consultation."  NPS00394.

On June 23, 2022, NPS entered an agreement ("the 2022 Agreement") with the County to replace the legal descriptions and parcel maps that defined these lands around Zoo Miami that were released from the land-use restrictions.  DE 31 at 2 ¶ 4. Pursuant to the 2022 Agreement, NPS also executed a Release and Termination of Restrictions ("the 2022 Release").  *Id.* at 2 ¶ 5.  However, prior to executing the 2022 Agreement and Release, NPS not only failed to engage in an ESA consultation with FWS but did not even complete a biological assessment.  *Id.* at 2 ¶ 6.  The 2022 Agreement and Release were necessary conditions for the County's approval of the

lease and development agreement entered on June 23, 2022, between the County and the developer.  DE 38 ¶ 8; DE 48 ¶ 8.

## II.   LEGAL FRAMEWORK

Because this case involves the ESA, the APA governs judicial review.  *Defs. of Wildlife v. Bureau of Ocean Energy Mgt.*, 684 F.3d 1242, 1248 (11th Cir. 2012) (citing 5 U.S.C. § 706(2)(A)).  When applying the APA, a court resolves the issues based on the agency's administrative record, thus a trial is generally unnecessary, and summary judgment is often appropriate.  *Fla. Key Deer v. Brown*, 364 F. Supp. 2d 1345, 1351 (S.D. Fla. 2005), *aff'd sub nom. Fla. Key Deer v. Paulison*, 522 F.3d 1133 (11th Cir. 2008).  Based on the administrative record, the reviewing court has the authority to set aside final agency actions that it finds to be arbitrary, capricious, an abuse of discretion, or otherwise unlawful.  5 U.S.C. § 706(2)(A).  In exercising this authority, the court must consider whether the agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.  *N. Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1538 (11th Cir. 1990).  If the court finds an agency action arbitrary, capricious, or contrary to law, the ordinary remedy is vacatur.  *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers*, 781 F.3d 1271, 1290 (11th Cir. 2015).  Whether to vacate an agency action falls within the court's broad equitable discretion.  *Id.*

## III.   DISCUSSION

Summary judgment is appropriate in this case because there is no genuine dispute as to any material fact and Plaintiffs are entitled to the relief they seek in Counts One and Two.  Fed. R. Civ. P. 56(a).  As a threshold matter, Federal Defendants

do not dispute that: (1) Plaintiffs have Article III standing to bring their claims; (2) Plaintiffs provided Federal Defendants with a notice of intent to sue under the ESA and NEPA more than sixty days prior to filing the Complaint, DE 1 ¶ 9; DE 25 ¶ 9; (3) the NPS' entry into the 2022 Agreement and execution of the 2022 Release are final agency actions within the meaning of the APA, DE 31 at 4 ¶ 1; (4) Federal Defendants are liable on the NEPA claim, DE 47 at 6;  (5) there was an ESA Section 7(a)(2) violation; and (6) vacatur is warranted.  DE 31 at 5 ¶ 2; DE 47 at 17.  Plaintiffs' ESA Section 7(d) claim is the only claim in dispute.

To put Section 7(d) in context, Congress enacted the ESA in 1973 to provide a means to conserve endangered and threatened species and the ecosystems on which those species depend.  16 U.S.C. § 1531(b).  Under the ESA's Section 7(a)(2), federal administrative agencies must ensure that their actions are not likely to jeopardize endangered or threatened species' continued existence or the destruction or adverse modification of those species' habitat.  § 1536(a)(2).  If an agency determines that its action may affect listed species or critical habitat, the agency must engage in formal consultation with FWS, unless one of several exceptions applies.  50 C.F.R. § 402.14(a).

Under ESA Section 7(d), after the initiation of a Section 7(a)(2) consultation, the agency "shall not make any irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate" Section 7(a)(2).  16 U.S.C. § 1536(d).  This prohibition is in force during the consultation process and continues until Section 7(a)(2)'s requirements are satisfied.  50 C.F.R. § 402.09.

## IV.   FINDINGS

The undisputed facts here warrant vacatur of the 2022 Agreement and Release, and the Court exercises its discretion not to reach the merits of the ESA Section 7(d) issue, as it can grant the relief requested without reviewing the Section 7(d) claim. Long before NPS' execution of the 2022 Agreement and Release, both FWS and Plaintiffs put NPS on notice that the Miami Wilds development could adversely affect federally listed species and their habitat.  Nonetheless, despite its responsibilities to preserve endangered species and their habitat, NPS failed to consult with FWS formally or informally as to the development prior to taking the final agency action of executing the Agreement and Release.  In short, NPS put the cart before the horse. This represents a clear ESA Section 7(a)(2) violation.  Because the agency's actions were unlawful, the ordinary APA remedy of vacatur is appropriate.

As vacatur nullifies the 2022 Agreement and Release, the Section 7(d) analysis is not yet relevant.  Section 7(d), by its terms, aims to prevent an agency from committing resources *after* the initiation of a consultation under Section 7(a)(2).  Given this administrative record, there was no such consultation.  At best, there was a vague exchange of listed species in the rudimentary beginnings of a biological assessment. Therefore, the Court will exercise its discretion and not address Count Three as Plaintiffs have obtained the remedy they seek.

## V.   CONCLUSION

Accordingly, it is

ORDERED that

1. Plaintiffs' Motion for Summary Judgment [DE 37] is GRANTED as to Counts One and Two and DENIED as to Count Three.

2. Federal Defendants' Motion for Partial Summary Judgment [DE 47] is GRANTED as to Counts One and Two and DENIED as to Count Three.

3. NPS' actions are vacated, and the 2022 Agreement (NPS00396–400) and the 2022 Release (NPS00454–458) are set aside and rendered void *ab initio*.

4. This case is CLOSED.

   DONE AND ORDERED in Miami, Florida, this 11th day of December, 2023.

_____
PATRICIA A. SEITZ
UNITED STATES SENIOR DISTRICT JUDGE

cc:   The Honorable Lisette M. Reid
      Counsel of Record